UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARCIN TLUSTOCHOWICZ, | ) | |
| | ) | |
| Petitioner, | ) | 12 C 5468 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| EMILIA TLUSTOCHOWICZ, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

On September 22, 2011, Respondent Emilia Tlustochowicz left Illinois for Poland, taking along her minor child without the consent of Petitioner Marcin Tlustochowicz, who is Emilia's husband and the child's father. Marcin brought a petition in the Regional Court for Szczecin Prawobrzeze and Zachod, in the Republic of Poland, seeking return of the child to the United States pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, T.I.A.S. No. 11,670, S. Treaty Doc. No. 99-11 (Oct. 25, 1980). Article 15 of the Convention permits a court of a nation that is party to the Convention to "request that the applicant obtain from the authorities of the State of the habitual residence of the child a decision or other determination that the removal or retention was wrongful within the meaning of Article 3 of the Convention." Convention, Art. 15; *see Sorenson v. Sorenson*, 563 F. Supp. 2d 961 (D. Minn. 2008), *aff'd*, 559 F.3d 871 (8th Cir. 2009). On April 12, 2012, the Polish court issued an Article 15 order requesting Marcin "to submit [to] the authorities of the state of the habitual residence of the child a decision or other determination that the removal of a minor child [first name]

-1-

Tlustochowicz was wrongful within the meaning of Article 3 of the Convention." Doc. 1-1 at 41. On July 11, 2012, Marcin filed an Article 15 petition with this court. Doc. 1.

Having examined the parties' written submissions, and having conducted an evidentiary hearing at which the parties offered testimony and exhibits, this court finds that Emilia's removal of the child from Illinois to Poland was a wrongful removal within the meaning of Article 3. To support that finding, the court makes the following findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a)(1). The court emphasized during the evidentiary hearing, and reiterates here, that its role under Article 15 is strictly limited to determining whether the removal was wrongful under Article 3. Any further proceedings that may be necessary under the Convention—including any affirmative defenses Emilia may wish to assert, *see Khan v. Fatima*, 680 F.3d 781, 784 (7th Cir. 2012); *Altamiranda Vale v. Avila*, 538 F.3d 581, 587 (7th Cir. 2008); *Fabri v. Pritikin-Fabri*, 221 F. Supp. 2d 859, 863-64 (N.D. Ill. 2001)—are beyond the scope of the Polish court's referral to this court and are reserved for the Polish court to consider as it deems fit.

## Findings of Fact

The court finds that the following facts have been established by a preponderance of the evidence:

1.     Marcin was born in Poland in 1972 and moved to the United States in 1992. Although he initially came to the United States to study, he decided soon thereafter to remain permanently. He is now, and was at the time of the events at issue here, a dual citizen of the United States and Poland.

2.     Marcin received a Bachelor of Science degree in Civil Engineering from the University of Illinois at Chicago in 1996, a Master of Science degree in the same subject from

Northwestern University in 1998, and a Ph.D. in Materials Engineering from the University of Illinois at Chicago in 2009.

    3.      Emilia was born in Poland in 1979. She is a Polish citizen and a permanent resident of the United States.

    4.      Emilia has had many years of study of the English language, beginning in primary school and including language classes in Cambridge, United Kingdom, and in Illinois.

    5.      Marcin and Emilia met in Poland in November 2008 when Marcin was there visiting members of his family.

    6.      Marcin very quickly informed Emilia that he lived in the United States. Emilia indicated that she did not consider this an impediment to their having a romantic relationship, and the two began dating.

    7.      Marcin and Emilia were married in a religious ceremony in Poland in November 2009, followed by a civil ceremony in Illinois in December 2009. The purpose of the civil ceremony was to facilitate Emilia's becoming a permanent resident of the United States.

    8.      In December 2009, Marcin and Emilia settled together at the house Marcin owned in Plainfield, Illinois.

    9.      Emilia brought with her from Poland to Illinois several heavy suitcases containing many of her possessions and personal effects, including the majority of her photographs and of the wedding gifts the couple received.

    10.      Both Marcin and Emilia agreed and intended to live together in Illinois.

    11.      After going through the application process with Marcin's assistance, Emilia became a permanent resident of the United States in May 2010.

12. While Emilia was pregnant with the child, Marcin read books on parenting and attended parenting classes with Emilia.

13. While Emilia was pregnant with the child, Emilia saw a physician or physicians who spoke English but not Polish.

14. On December 30, 2010, the child was born to Marcin and Emilia in Naperville, Illinois. The child is a citizen of both the United States and Poland.

15. Marcin took two weeks of leave from work to help care for the child.

16. Marcin assisted with the care of the child, would feed and play with the child, and would purchase items for the child.

17. From mid-July to September 7, 2011, Emilia and the child took a vacation to Poland to visit Emilia's family, while Marcin remained in the United States. Marcin paid for the trip by purchasing a round-trip ticket for Emilia.

18. When the ticket was first purchased, Marcin and Emilia intended that the vacation would end in late August. However, at Marcin's suggestion, the length of the trip was extended by approximately one week; Marcin made the suggestion due to circumstances related to his work and to the sale of the family's vehicle.

19. Both Marcin and Emilia viewed the trip to Poland as a temporary vacation; neither intended that Emilia or the child would remain in Poland permanently or indefinitely.

20. Emilia and the child returned to Illinois on September 7, 2011.

21. Around that time, Marcin and Emilia discussed buying a new house closer to Marcin's workplace to reduce his commute to work, which at that point exceeded two hours daily. They also discussed buying a larger house, but Emilia objected on the ground that it would require more cleaning and she already had plenty of work to do caring for the child.

Emilia also preferred not to move because she had recently become accustomed to the Plainfield neighborhood in which they then lived and did not want to have to become accustomed to a new neighborhood.

22. Also around that time, Marcin and Emilia discussed buying a new car for Emilia, and Marcin in fact bought Emilia a new car, a station wagon, which Emilia drove.

23. On September 9, 2011, Emilia sent an email to Marcin. Although the email addressed an apparent disagreement between the couple regarding how the child would be fed, the email was very affectionate and provided no indication that Emilia had any intention to return to Poland permanently or indefinitely either alone or with the child.

24. On or around September 13, 2011, Emilia contacted her parents, who live in Poland, and asked them to buy her a plane ticket to return to Poland.

25. Emilia's motivation in leaving Illinois was strife she was experiencing in her marital relationship with Marcin. (The court makes no finding as to the particulars of that strife. Because it is not relevant to the court's determination under Article 3, the court ruled inadmissible much of the parties' evidence regarding the alleged strife. The court's evidentiary ruling is not intended to suggest, one way or the other, whether such evidence would be relevant to any affirmative defenses Emilia may assert in the Polish court.)

26. Emilia did not inform Marcin of her desire and intent to return to Poland permanently or indefinitely at any time prior to her departure on September 22, 2011.

27. Using a ticket purchased by her parents, Emilia left for Poland on September 22, 2011, taking the child with her.

28. Marcin never consented to Emilia's taking the child back to Poland. Had Marcin been aware of Emilia's plan to take the child to Poland, he would not have consented.

29. When Marcin returned from work on September 22, he discovered a letter from Emilia informing him that she had decided to leave. The following morning he received a text message from Emilia informing him that she had arrived in Poland with the child.

30. These were the first indications that Marcin received that Emilia no longer intended to live with him and raise their child in Illinois.

31. Marcin soon consulted the U.S. State Department website for advice on regaining custody of the child.

32. Marcin reported the child missing to local authorities on September 23, 2011.

33. Marcin had multiple contacts with Emilia in the months after she arrived in Poland by phone and over the internet.

34. Marcin visited Emilia and the child in Poland and attempted to persuade Emilia to return.

35. Marcin filed a petition with the Polish courts to have the child returned to Illinois pursuant to the Convention. That petition precipitated this reference by the Polish court of the Article 3 determination to the United States courts.

36. Emilia and the child remain in Poland as of August 31, 2012.

## Conclusions of Law

This court has jurisdiction under the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601 *et seq.*, the statute enacted by Congress to implement the Convention. *See* 42 U.S.C. § 11603(a). The ICARA provides that courts shall decide petitions brought under the ICARA "in accordance with the Convention." 42 U.S.C. § 11603(d). Marcin has the burden of establishing, by the preponderance of the evidence, that the child was wrongfully removed within the meaning of the Convention. *See* 42 U.S.C. § 11603(e)(1)(A).

According to the United States Department of State, "The Hague Convention on the Civil Aspects of International Child Abduction came into force between the United States and Poland on November 1, 1992. Therefore, Hague Convention provisions for return would apply to children abducted or retained after November 1, 1992." U.S. Dep't of State, "International Parental Child Abduction: Poland," http://travel.state.gov/abduction/country/country_515.html (visited Aug. 30, 2012). Thus, the Convention applies to Emilia's taking the child to Poland in September 2011.

> Article 3 of the Convention provides as follows:
>
> The removal or the retention of a child is to be considered wrongful where—
>
> a) it is in breach of rights of custody attributed to a person, an institution, or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.
>
> The rights of custody mentioned in sub-paragraph a) above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

Convention, Art. 3. Article 5 provides that "'rights of custody' shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Convention, Art. 5(a). The "wrongful removal" analysis under Article 3 requires consideration of these issues: (1) when the removal occurred; (2) in what nation the child was "habitually resident immediately before" the time of removal; (3) whether "rights of custody [were] attributed to" the petitioner "under the law of the State" of habitual residence; (4) whether

the removal was "in breach of" those rights; and (5) whether the petitioner was exercising those rights at the time of removal, or would have done so but for the removal. *See Fabri*, 221 F. Supp. 2d at 863 (articulating the third and fourth issue as a single inquiry).

As to the first issue, the court has found that Emilia removed the child from Illinois to Poland on September 22, 2011.

As to the second issue, the court holds that Illinois was the child's habitual residence immediately prior to the removal. "The determination of 'habitual residence' is to be made on the basis of the everyday meaning of these words rather than the legal meaning that a particular jurisdiction attaches to them." *Kijowska v. Haines*, 463 F.3d 583, 586 (7th Cir. 2006). The Seventh Circuit has approved the standard set forth in *Mozes v. Mozes*, 239 F.3d 1067 (9th Cir. 2001). *See Koch v. Koch*, 450 F.3d 703, 715 (7th Cir. 2006) ("The district court reluctantly used *Mozes* in the alternative, but we see no reason to disavow the *Mozes* approach and believe it is far more flexible than the district court inferred."). "In the case of young children, the [*Mozes*] court found it most prudent to focus on the intent of the parents rather than the intent of the child in determining the child's habitual residence." *Id*. at 713. The standard requires courts "to determine whether the parents intended to abandon their previous habitual residence, judging that intent at the last time the parents had a shared intent." *Id*. at 709. "The establishment of a habitual residence requires an actual change in geography, as well as the passage of an appreciable amount of time." *Id*. at 715.

The facts found above show that when Marcin and Emilia married and moved to Illinois, they intended to live together in Illinois on a permanent or long-term basis. Emilia brought several suitcases worth of possessions and personal effects to the United States and moved into Marcin's house; she and Marcin also began the application process that culminated in her

receiving United States permanent resident status. Their intent had not changed as of December 2010, when they had been in the United States for a year and Emilia gave birth to the child. And Emilia and the child's vacation to Poland in the summer of 2011 only confirms that Marcin and Emilia still both intended to stay in the United States and raise the child there: Marcin bought Emilia a round-trip ticket and stayed behind, and when the length of the trip was extended, the extension was short (about a week) rather than lengthy or indeterminate. When Emilia returned on September 7, she and Marcin discussed buying and moving to a new house, also in Illinois, and actually bought a new car for Emilia—further indications that they shared an intent to remain permanently with the child in the United States. And Emilia's September 9 email to Marcin was affectionate and offered no suggestion of any intent or desire to return with the child to Poland permanently or indefinitely.

Emilia's intent changed around September 13, when troubles in her marital relationship led her to ask her parents to help fly her back to Poland. At that point, the parents' intent regarding the child's habitual residence was no longer shared, for Marcin still intended and expected that the family would remain in Illinois. Thus, the parents' last shared intent was that the child's habitual residence be the United States. Emilia of course could not change the child's habitual residence by unilaterally removing him to Poland; as the Seventh Circuit has held, "a parent cannot create a new 'habitual residence' by the wrongful removal and sequestering of a child." *Kijowska*, 463 F.3d at 587.

As to the third issue, the court holds that Marcin had rights of custody over the child under Illinois law at the time of the removal. (The court looks to Illinois rather than federal law because, in the United States, laws defining the rights and obligations created by the parent-child relationship are for the most part determined by state law.) At the time of removal, there had

been no court or administrative order concerning custody of the child, so the question under Article 3 is what rights of custody arose "by operation of law." Marcin points to a section of the Illinois Probate Act that, at the time of the child's birth, provided as follows:

> Parental rights to custody. If both parents of a minor are living and are competent to transact their own business and are fit persons, they are entitled to the custody of the person of the minor and the direction of his education. … The parents have equal powers, rights and duties concerning the minor.

755 ILCS 5/11-7 (2010). When the child was born, then, Marcin indisputably had legal custody of the child, together with Emilia.

Emilia notes that this provision was repealed effective January 1, 2011, months before the child's removal to Poland, *see* Illinois Pub. Act 96-1338, § 10, and argues that its repeal means that Marcin had lost legal custody of the child as of the date the child was removed to Poland. The argument is wholly without merit. It is true that the parties have not pointed to, and in the press of time the court has been unable to find, any current Illinois statute or case explicitly stating the principle of law reflected in the repealed provision: that where, as was the case here immediately prior to removal, a minor child's parents are married, living together, and raising the child together, and no court or administrative body has adjudicated custody of the child, both parents have custody of the child. But it is impossible to imagine that the Illinois legislature's repeal of the provision was intended to eliminate the custody rights enjoyed in Illinois by all married parents over their children. Any such effort surely would violate the Federal Constitution. *See Michael H. v. Gerald D.*, 491 U.S. 110, 123-24 (1989) (plurality opinion) (citing cases). That Illinois did not intend so radical a step is shown by statutory text added by the very legislation that repealed the above-quoted Probate Act provision, text that expressly references, and thus assumes the continued existence of, Illinois parents' custody

-10-

rights over their children. *See* 755 ILCS 5/11-5(b) (prohibiting the appointment of a guardian of a minor if the court "finds that … the minor has a living parent … whose parental rights have not been terminated, whose whereabouts are known, and who is willing and able to make and carry out day-to-day child care decisions concerning the minor, unless," among other things, "the parent or parents *voluntarily relinquished physical custody of the minor*") (emphasizing the text added by Public Act 96-1338, § 5). Accordingly, the court holds that Illinois law gave Marcin and Emilia custody rights over the child as of the time of removal.

As to the fourth issue, the court holds that Emilia's removal of the child from Illinois to Poland was in breach of Marcin's custody rights. Emilia took the child to Poland without obtaining consent from or even notifying Marcin, and her intent in doing so was to deprive Marcin of the ability to exercise his right of custody.

As to the fifth issue, the court holds that Marcin exercised and sought to exercise his rights of custody as of the time of removal. Prior to and after the child's birth, Marcin took part in his upbringing by reading books on child-rearing, attending parenting classes with Emilia, and taking time off from work to help care for the newborn. Prior to the removal, Marcin cared for the child by acting as his father. Immediately following the removal, Marcin filed a missing person report and initiating a police investigation, and he has continued seeking to regain custody by visiting Emilia, attempting to persuade her to return, and filing his Hague Convention petition. Given these facts, Marcin was exercising his custody rights at the time of removal and thereafter has attempted to restore his custody over the child.

Given these circumstances, Emilia's removal of the child to Poland was "wrongful" within the meaning of Article 3 of the Convention. *See Kijowska*, 463 F.3d at 588; *Feder v. Evans-Feder*, 63 F.3d 217, 222-26 (3d Cir. 1995).

August 31, 2012

_____
United States District Judge

-12-